AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES LOCAL 66 AND COUNCIL 96, for themselves and on behalf of Ann Maki and Lois McConnell and certain other nursing employees of Nopeming Sanitorium, Appellants,

v.

ST. LOUIS COUNTY BOARD OF COMMISSIONERS, et al., Respondents.

No. 48497.

Supreme Court of Minnesota.

June 8, 1979.

Halverson, Watters, Bye & Downs, Don
L. Bye and James D. Robinson, Jr., Duluth,
for appellants.

Wayne Gilbert, Asst. County Atty., Du-
luth, for respondents.

Heard before KELLY, WAHL, and KEN-
NEDY, JJ., and considered and decided by
the court en banc.

CHARLES W. KENNEDY, Justice.*

This is an appeal from a summary judgment entered in favor of the defendant public employer in an action alleging that the employer had committed an unfair labor practice in violation of Minn.St. 179.68 by refusing to meet and negotiate a work schedule change with the exclusive representative of the employees. The trial court ruled "[t]hat under the terms of the [labor] contract, the sole recourse of the plaintiff employees and their union to contest the defendants' action in setting up such new schedule is under the grievance procedure," and dismissed the action with prejudice. We reverse.

The parties agree that during the relevant period a written labor contract was in force between the employer-county and Minnesota Arrowhead District Council 96 of the American Federation of State, County, and Municipal Employees, representing Locals 66, 83, 733, and 749. It provided in Article I, § 1, in part:

> "The County recognizes the Union [1] as the exclusive representative for collective bargaining purposes of all employees of the County contained in this bargaining unit * * *."

Article VIII, § 3, stated in part:

> "Employees may be required to work shifts on schedules mutually arrived at between the department heads and the Union * * *."

Plaintiffs Ann Maki and Lois McConnell are employed as nursing assistants at Nopeming Nursing Home (Nopeming Sanitorium), a facility run by St. Louis County. Before January 15, 1977, the agreement pertaining to "Overtime, Workday, and Workweek" at the Nopeming Nursing Home provided that overtime would be paid for all hours worked in excess of 8 hours in

any workday and in excess of 80 hours in a 14-day period at the rate of 1½ times the regular rate, and that the workweek started on Monday at 12:01 a. m. The agreement, which was "subject to the present schedule for the workweek," provided that "any change is subject to renegotiation."

On January 15, 1977, the work schedule was changed after the Nopeming nursing assistants had voted in favor of one of two proposed changes. The proposed schedule changes were the result of consultations between the Nopeming director of nurses, under the direction of the Nopeming administrator, and the president of A.F.S.C.M.E. Local 83. Neither Council 96 nor Local 66 of A.F.S.C.M.E. participated in negotiating the schedule change, which altered the sequence of "days on" and "days off" and changed the beginning of the workweek to 12:01 a. m. Saturday.

On July 14, 1977, employees Maki and McConnell challenged the change by filing a grievance asking for overtime pay. After their alleged grievance was rejected by their supervisor, at step 1 of the 4-step contractual grievance procedure, Local 66 and Council 96 commenced this action "for themselves and on behalf of" Maki, McConnell, and other nursing employees of Nopeming. Their complaint alleged that "Local 66 and Council 96, are the designated exclusive bargaining representatives of the classified employees for the County * * *"; that the employer had made a "unilateral change" in the work schedule which was "in effect a refusal to renegotiate the terms and conditions of employment" and an unfair labor practice under Minn.St. 179.68, subd. 2(5); and that efforts by "Plaintiff Union" to meet and negotiate with the nursing home administrator had failed. Defendants' answer denied that Local 66 and Council 96 were the "exclusive

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

1. The preamble of the contract said: "The County of St. Louis, Minnesota (hereinafter referred to as the 'County') through its duly authorized representatives, and City and County Employees Local 66, Local 83, Local 733, and

Local 749 as affiliated Unions of the American Federation of State, County, and Municipal Employees represented by Minnesota Arrowhead District Council 96 (hereinafter referred to as the 'Union') representing employees covered by this agreement, do hereby reach an Understanding and Agreement * * *."

bargaining representatives" of the employees, alleged that Local 83 was "the exclusive bargaining agent for the employees at the Nopeming Nursing Home," and alleged that plaintiff employees and Council 96 were estopped from bringing this action because they "elected to file a grievance" under the contractual grievance procedure.

In effect, plaintiffs' claim was that the work schedule change had not been negotiated with the employees' exclusive representative. That amounted to a dispute as to the identity of the exclusive representative. Which of the employee organizations, Local 83, Local 66, Council 96, was the exclusive representative of the employees was not decided by the trial court. It ruled that the employees and "their union" had to contest the adoption of the new work schedule through the contractual grievance procedure. That would mean that the dispute concerning the identity of the exclusive representative was to be taken through the contractual grievance procedure. Thus, the basic question presented by the appeal is whether the dispute concerning the identity of the exclusive representative could be resolved through the contractual grievance procedure. If it could be so resolved, then access to the courts could be denied. *Ellerbrock v. Bd. of Ed., Sp. Sch. Dist. No. 6,* 269 N.W.2d 858 (Minn.1978). If that dispute could not be resolved through the grievance procedure, then it was a genuine issue of material fact to be decided by the district court in this action alleging an unfair labor practice.

Because the dispute concerning the identity of the exclusive representative is not a grievance within the contractual or statutory definitions of "grievance," and because the contractual grievance procedure requires participation by the employees' exclusive representative, the dispute could not be resolved through the contractual grievance procedure and must be determined by the district court.

Minn.St. 179.66, subd. 2, provides that "[a] public employer has an obligation to meet and negotiate in good faith with the exclusive representative of the public employees in an appropriate unit regarding grievance procedures and the terms and conditions of employment * * *." Section 179.63, subd. 6, defines "exclusive representative" as "an employee organization which has been designated by a majority of those votes cast in the appropriate unit and has been certified pursuant to section 179.-67." Section 179.67 provides for certification of an exclusive representative by the director of the bureau of mediation services, and sets out the ways by which certification may be obtained. Thus, any dispute as to the identity of the employees' exclusive representative necessarily involves questions of fact concerning what has occurred pursuant to those statutes.

Article III B, § 1, of the labor agreement defines "grievance" as "a dispute or disagreement raised by any employee against the County involving the interpretation or application of the specific provisions of this Agreement * * *." Minn.St. 179.70, subd. 6, defines "grievance" as "a dispute or disagreement as to the interpretation or application of any term or terms of any contract required by this section."

The dispute as to whether the work schedule change was negotiated by the employees' exclusive representative is not a "grievance" within the contract or the statute. It does not involve the interpretation or application of any specific provision or term of the labor contract. Rather, it presents an issue as to the identity of the representative authorized to negotiate on behalf of the employees—an issue which the grievance procedure could not resolve.

The grievance procedure involves submission of the grievance by "the employee and/or his representative" to a supervisor as step 1; a meeting between the department head and "the Union" as step 2; presentation of the grievance in writing by "the Union" to a county grievance board as step 3; and then referral by "the Union" to arbitration. At least after step 1, participation by the employees' exclusive representative is required. If the identity of that representative is disputed, the grievance

**170**

procedure lacks an essential participant and cannot function.

 Under Minn.St. 179.68, subd. 1, the district court has jurisdiction over an action alleging an unfair labor practice by a public employer, as specified in the statute. Included in the specified unfair practices is "refusing to meet and negotiate in good faith with the exclusive representative" of employees in an appropriate unit. Minn.St. 179.68, subd. 2(5). If Council 96 or Local 66—and not Local 83—was the employees' exclusive representative, and the employer negotiated with Local 83 and refused to negotiate with Council 96 or Local 66, then it could be found that an unfair labor practice had occurred. Defendants' answer disputes the identity of the employees' exclusive representative, creating a genuine issue of material fact which, along with other issues presented by this unfair labor practice action, is within the jurisdiction of the district court to decide.

 The fact that plaintiffs used the grievance procedure through step 1 does not estop them from bringing this action. Plaintiffs gained nothing and defendants lost nothing by plaintiffs' attempt to pursue an ineffective remedy. See, *First National Bank v. Flynn,* 190 Minn. 102, 250 N.W. 806 (1933).

Because the identity of the employees' exclusive representative remains a genuine issue of material fact, the summary judgment dismissing plaintiffs' complaint is reversed, Rule 56.03, Rules of Civil Procedure, and the case is remanded for trial.

Reversed and remanded.

SHERAN, C. J., took no part in the consideration or decision of this case.